**SOUTHWESTERN INVESTMENT COMPANY, Petitioner,**

**v.**

**Claude D. NEELEY et ux., Respondents.**

**No. B–1691.**

Supreme Court of Texas.

March 25, 1970.

Clayton & Clayton, Cleo G. Clayton, Jr., Amarillo, for petitioner.

Johnson & Browning, William V. Browning and Kenneth Johnson, Wichita Falls, for respondents.

POPE, Justice.

This suit for conversion of household furniture was brought by Claude D. Neeley and wife, Beverly June Neeley, against Southwestern Investment Company. The first time this case was before us, we reversed the judgment and remanded the cause for a new trial. 430 S.W.2d 465. On retrial, the jury awarded plaintiffs $5,200.00 actual damages and $20,000.00 exemplary damages. After the Neeleys remitted a part of the actual damages, the trial court rendered judgment for $4,500.00 actual damages and $20,000.00 exemplary damages. The court of civil appeals then suggested a remittitur of an additional $3,800.00 actual damages. The Neeleys filed such a remittitur, and the court of civil appeals affirmed the judgment for $700.00 actual damages and $20,000.00 exemplary damages. 443 S.W.2d 573.

We granted the application of Southwestern Investment Company, hereinafter called S.I.C., upon its point that the court of civil appeals erred in suggesting a remittitur of $3,800.00 of the $4,500.00 awarded by the trial court as actual damages while simultaneously affirming the $20,000.00 awarded as exemplary damages in the trial court. We have carefully considered the other points and arguments presented by the parties, but we are still of the opinion that this is the only point that we need to discuss on this appeal.

In April 1962, the Neeleys executed a note for $1,490.16 payable to S.I.C. in 24 monthly installments of $62.09 each. This

note was secured by a chattel mortgage that listed specific items of furniture belonging to the Neeleys at that time. In March 1963, Mrs. Neeley desired to pay off this note and another note the Neeleys had made to S.I.C. She telephoned the S.I.C. office and was told that $837.01 would pay off the two notes at that time. The next day, Mrs. Neeley went to the S.I.C. office and argued that $837.01 was too high a payoff figure, but she finally relented and gave S.I.C. a check for this amount marked "In full of account." S. I.C. accepted and deposited this check. Several months later, S.I.C. discovered that one of the previous payments had mistakenly been credited twice to the Neeley account and thus the payoff figure quoted Mrs. Neeley was $62.09 too small. Subsequently, S.I.C. contacted the Neeleys several times, but the Neeleys refused to pay the $62.09 since they believed the account had been paid in full.

In early 1964, the Neeleys moved their furniture to a house in Wichita Falls which they rented from one Lambert. In the summer of 1964, they left the furniture in the Lambert house and went to live with Mr. Neeley's parents in Strawn, Texas. S.I.C. found out where the furniture was being stored and contacted one Brumbelow, a used furniture dealer. After Brumbelow had personally viewed the furniture, Scott Allred, a collection manager for S.I.C., went to the county clerk's office and made a list of the furniture covered by the chattel mortgage. Allred, acting for S.I.C., gave this list to Brumbelow, and sold him all the furniture listed for the sum of $62.-09. Brumbelow then went to the Lambert house and apparently took possession of all the furniture there, which included a number of items not listed in the chattel mortgage.

At the retrial, Mrs. Neeley testified that all of the furniture in the house was worth approximately $4,500.00. Mr. Neeley testified that all of the furniture in the house was worth something between $4,500.00 and $5,000.00. On crossexamination by counsel for S.I.C., Brumbelow testified that the furniture on the list he purchased from S.I.C. was worth from $700.00 to $800.00. The court of civil appeals held that S.I.C. converted the property which was described on the list and which it sold to Brumbelow, but held further that S.I.C. was not responsible for Brumbelow's taking the other pieces of the Neeleys' furniture. Accordingly, the court of civil appeals ordered a remittitur of all actual damages down to the sum of $700.00 which was the undisputed value of the items included on the list.

By accepting a remittitur that reduced actual damages from $4,500.00 to $700.00 while leaving exemplary damages of $20,-000.00, the court of civil appeals permitted the ratio between exemplary damages and actual damages to go from approximately four to one to approximately twenty-eight to one. It is the correctness of this action that we are now questioning.

■ In finding that exemplary damages were not excessive in this case, the court of civil appeals quoted from Mayer v. Duke, 72 Tex. 445, 10 S.W. 565 (1889). This case correctly states that in determining whether exemplary damages are excessive, a court of civil appeals is to consider such matters as the degree of outrage produced by the evil, the frequency of the evil, and the size of an award needed to deter similar wrongs in the future. However, these are not the only matters that a court of civil appeals should consider in a case in which the trial court has awarded both actual and exemplary damages and the court of civil appeals has decided to suggest a remittitur substantially reducing actual damages.

■ It has long been the law in Texas that the amount of exemplary damages should be reasonably proportioned to the actual damages found. Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W. 2d 397, 409 (1934); P. J. Willis & Bros. v. McNeill, 57 Tex. 465, 480 (1882); Flanary v. Wood, 32 Tex.Civ.App. 250, 73 S.W.

1072 (1903, writ ref.); 17 Tex.Jur.2d Damages, § 187; 17 A.L.R.2d 527, 548; 33 A.L.R. 384, 399. In the first instance, the amount to be awarded rests in the discretion of the jury. Tynberg v. Cohen, 76 Tex. 409, 13 S.W. 315, 317 (1890); Skillern & Sons, Inc. v. Stewart, 379 S.W.2d 687, 692 (Tex.Civ.App.1964, writ ref. n. r. e.).

We now hold that when a court of civil appeals suggests a remittitur of a substantial portion of the actual damages found by a jury, the court of civil appeals is under an obligation to give consideration to the ratio between exemplary and actual damages as established by the jury in passing on the further question of excessiveness of exemplary damages. Particularly is this true when the jury and trial court have determined actual damages on the premise that the defendant has wrongfully converted all the items in a building and the court of civil appeals has fixed the maximum permissible actual damages on the basis that the defendant has wrongfully converted only some of the items in the building. Commercial Credit Corp. v. Patterson, 248 S.W.2d 965 (Tex.Civ.App.1952, writ ref. n. r. e.).

This is not to say that a court of civil appeals must rigidly adhere to the ratio as found by the fact finder whenever the court of civil appeals suggests a remittitur of some portion of actual damages. We are not to be understood as holding that the ratio between exemplary damages and actual damages found by the jury, to the exclusion of every other consideration, is of controlling importance in estimating the exemplary damages after a remittitur of a portion of actual damages. However, in addition to considering the other relevant factors, a court of civil appeals should also take into consideration the ratio between exemplary damages and actual damages as found by the jury, if the court of civil appeals has decided to order a substantial reduction in the actual damages awarded.

Thus, although this issue was not faced squarely in Higginbotham v. O'Keeffe, 340 S.W.2d 350 (Tex.Civ.App.1960, writ ref. n. r. e.), this court found it was not reversible error for the court of civil appeals there to accept a remittitur of $25,000.00 of the $150,000.00 actual damages awarded while leaving undisturbed the award of $20,000.00 for exemplary damages.

The only case that we have found that directly confronted the problem now before us is Flame Coal Co. v. United Mine Workers, 303 F.2d 39, 97 A.L.R.2d 1136 (6th Cir. 1962), cert. den. 371 U.S. 891, 83 S.Ct. 186, 9 L.Ed.2d 125. There the trial court awarded $54,845.00 compensatory damages and $50,000.00 punitive damages. The appellate court suggested and accepted a remittitur of all but $8,225.00 of the compensatory damages while upholding the award of $50,000.00 punitive damages. The court there expressly noted, however, that the controlling Kentucky law had clearly stated the rule that an award of punitive damages need not bear a proportional relationship to the award of actual damages. As stated above, the rule in Texas is clearly to the contrary.

A determination of excess by a court of civil appeals is one of fact and, as such, is not reviewable by the Supreme Court. Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993 (1916). But since the court of civil appeals in passing on excessiveness of exemplary damages here followed an erroneous rule of law by failing to take into consideration the ratio established by the jury between exemplary and actual damages, we must remand the cause to that court for further consideration. Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835, 841 (1959). See also, 14 Sw.L.J. 150, 155 (1960).

The judgment of the court of civil appeals is reversed, and the cause is remanded to that court for further consideration in accordance with this opinion.