IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-08-00071-CR

 

In re
Jimmie Foxworth

 

 



Original Proceeding

 

 



MEMORANDUM  Opinion



 

Jimmie Foxworth has filed a “motion for show cause
order” relating to the 217th District Court’s alleged refusal to rule on
Foxworth’s motion for DNA testing.

            In 2005, we affirmed Foxworth’s
judgment of conviction of aggravated sexual assault and sixty-year sentence.  Foxworth
v. State, No. 10-04-00209-CR (Tex. App.—Waco Sept. 21, 2005, pet. ref’d) (not designated for publication).  That
appeal had been transferred to us from the Ninth Court of Appeals.  The 217th
District Court is in Angelina County, which is now within the jurisdiction of
the Twelfth Court of Appeals.  Tex.
Gov’t. Code Ann. § 22.201(m) (Vernon Supp. 2007).

The instant “show cause” proceeding arises from a
proceeding filed in Angelina County.  The Tenth Court of Appeals does not have
jurisdiction of a trial court judge for the Twelfth Judicial District, nor of
appeals arising out of proceedings originating in Angelina County.  See Tex. Gov’t. Code Ann. §
22.221(b)(2) (Vernon 2004), § 22.201(m).  Therefore,
we do not have jurisdiction of the “motion for show cause order” relating to
the 217th District Court’s alleged refusal to rule on Foxworth’s motion for DNA
testing, nor is there otherwise appellate jurisdiction for a motion-for-show-cause
order (Foxworth expressly states in his show-cause motion that he is not
seeking mandamus relief).

This proceeding is dismissed for lack of
jurisdiction.

 

 

PER CURIAM

 

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Proceeding
dismissed

Opinion
delivered and filed March 26, 2008

Do
not publish

[OT06] 

 








 






McEathron wanted to finalize the purchase on Friday,
but Hallberg, who was going to Austin for the weekend, wanted to wait until the following
Monday. McEathron, however, insisted on completing the transfer on Friday, and Norcross, after
consulting with Hallberg by telephone, accepted the payment check, made out to Hallberg, and
delivered the car to McEathron while Hallberg was in Austin.
      The following Wednesday, McEathron was informed by his lender that the title to the car was
marked "reconditioned." According to the trial testimony, a reconditioned title is issued after a
vehicle, which has been ruined by some unfortunate event, is rebuilt and made road-worthy again. 
The title is stamped "reconditioned" so that subsequent purchasers will be notified that the car's
history includes some traumatic occurrence, such as being "totaled" in an accident or a flood. Of
course, the value of a vehicle is substantially reduced by the fact that it is held under a
reconditioned title. McEathron brought this suit under the DTPA, alleging that the failure of
Hallberg or Norcross to inform him that the car's title was "reconditioned" and that the car had
been previously stolen were deceptive acts and unconscionable actions within the meaning of the
statute.
      At the conclusion of an on-the-record charge conference, in which Norcross objected to the
lack of an issue on agency, McEathron's attorney sought to clarify the reason that the charge did
not contain any reference to an agency relationship between Norcross and Hallberg:
[PLAINTIFF'S ATTORNEY]: The only thing, from our part, Your Honor, just
to make sure it's clear on the record, we had a conference about the Charge out of the
presence of the court reporter, and it's my understanding basically as a matter of law the
Court found that Tom Hallberg was the agent, and was clearly acting within the scope of his
authority on behalf of Jane Norcross. Is that the Court's finding?
THE COURT: Yes. That's what I found, and that's why I'm submitting the
question as you all have tendered it.
Because of this ruling, the charge did not require the jury to determine if Hallberg was Norcross'
agent or if he was acting within the scope of any such agency when he negotiated the sale of the
car to McEathron. 
      In point one, Norcross challenges the court's conclusion that Halberg was Norcross' agent
and that he was acting within the scope of the agency when he negotiated the sale of the car to
McEathron. Point two claims that the court erred by failing to require the jury to determine if the
acts committed by Hallberg were committed in the scope of the agency. The existence of an
agency relationship can be a question of law for the court to determine. See Ross v. Texas One
Partnership, 796 S.W.2d 206, 209-10 (Tex. App.—Dallas 1990), writ denied per curiam, 806
S.W.2d 222 (Tex. 1991). "[I]f the facts are uncontroverted or otherwise established, the existence
of an agency relationship is a pure question of law." Id. at 210. Because "a trial court may
refuse to submit an issue only if no evidence exists to warrant its submission," we must review
the evidence to determine if the court erred in finding that Hallberg was Norcross' agent and was
acting in the scope of that agency. See Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992). If
there is no evidence to support the contrary conclusion, i.e., that Hallberg was not Norcross' agent
or was not acting within the scope of the agency, then the court did not err in refusing to submit
the issue to the jury because "only disputed issues must be submitted to the jury." See T. O.
Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 223 (Tex. 1992).
      Both Norcross and Hallberg testified that the title to the car was in Norcross' name. Each
agreed that Norcross had the authority to prevent the sale of the vehicle if she determined that the
terms of the sale were unreasonable. Although each also testified that they "felt" that Hallberg
was selling his own car, neither offered any evidence or testimony which disputed the fact that
Norcross held legal title to the car. Thus, only Norcross had the legal ability to transfer the title
to the car. See Tex. Rev. Civ. Stat. Ann. art. 6687-1, § 33(a) (Vernon Supp. 1994). 
      Because only Norcross had the legal authority to transfer the ownership of the car, Halberg
was necessarily her agent when he negotiated the terms of the sale with McEathron. This agency
relationship was created by Norcross to allow Hallberg to arrange for the sale of the automobile
that Norcross owned. Norcross manifested her consent that Hallberg act on her behalf by refusing
to complete the transaction without Hallberg's approval and had the right to control the details of
the transaction because of her legal veto over the sale. Thus, the elements of an agency
relationship are indisputably established by the evidence. See Campbell v. Hamilton, 632 S.W.2d
633, 634-35 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). Hallberg's statements to McEathron
during the negotiations for the sale are squarely within the scope of the agency created to sell the
vehicle. Thus, the evidence conclusively established that Hallberg was Norcross' agent and was
acting within the scope of the agency. There was no need to submit this issue to the jury. Points
one and two are overruled.
            The next four points complain about the court's charge in implementing this conclusion
of agency , i.e., not conditioning the questions on whether Hallberg was "acting as an agent for
Jane H. Norcross" (point 3); "form" of the questions (point 4); failure of the questions to require
a finding of liability of both Norcross and Hallberg or neither (point 5); and failure to submit
instructions and definitions on the agency theory (point 6). 
      Because the court's conclusion regarding the agency relationship between Norcross and
Hallberg has been upheld, points three and six must be overruled as "only disputed issues must
be submitted to the jury." See Stanley Boot Co., 847 S.W.2d at 223. The issue of the agency
relationship is not subject to dispute under the state of the facts presented, and there was no issue
for the jury's determination. Similarly, because there was no need for a question regarding the
agency theory, there is no need for any instructions or definitions on the topic. See Moody v.
EMC Services, Inc., 828 S.W.2d 237, 244 (Tex. App.—Houston [14th Dist.] 1992, writ denied). 
The objections raised in points four and five were neither raised in the trial court nor briefed in
this court. Therefore, these complaints are waived, and points four and five are overruled. See
Tex. R. Civ. P. 274; Tex. R. App. P. 52(a).
      In point seven Norcross complains that the court failed to provide a standard to guide the
jury's consideration of punitive damages. Norcross raised this same complaint in the trial court. 
As a result of her objection, the court rewrote the charge to the jury regarding additional damages. 
The form of the instructions provided to the jury was that suggested by Norcross' attorney at the
charge conference. The instructions outlined the factors that the jury could consider in
determining the amount of additional damages suitable for the case in generally the same terms
as found in Alamo Nat. Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). In her brief in this
court, Norcross makes no effort to explain how the instruction she requested in the trial court is
now erroneous. In fact, the argument in her brief does not shed any light whatsoever on the
complaint contained in the point of error. Because she requested the instruction as it was given
and because her brief does not contain argument in support of the point of error, this complaint
is waived, and point seven is overruled.
      The judgment is affirmed.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed January 19, 1994
Do not publish